SIMEON BENJAMIN, OLIVER PHELPS and EBEN SMITH, *vs.* THE ELMIRA, JEFFERSON AND CANANDAIGUA RAILROAD COMPANY.

A mortgage given by a railroad company to secure the payment of its bonds, a bond issued by the company, and a certificate indorsed thereon, stating that such bond is included in the mortgage, are all to be construed together, as parts and parcels of the same security.

A mortgage, executed by a railroad company upon its railroad, with the lands, tracks, buildings, privileges and franchises, " together with all the locomotives, tenders, cars, carriages, tools and machinery owned or *thereafter to be owned* by the company, or in any way belonging to or appertaining to said road and to be used thereon," is valid in equity, in respect to subsequently acquired property ; and a decree in a suit brought to foreclose the same, declaring such to be its effect, and directing a sale of all the property embraced therein, is a conclusive adjudication upon that point, against all persons, parties or privies in that suit.

Persons made parties to a foreclosure suit as subsequent incumbrancers by judgment or mortgage, whose rights were already acquired, and existed at the commencement of the suit, are bound to set up their claims and assert their rights, in that action, at the peril of being cut off and foreclosed, in respect to such claims.

But if the decree in such action were not binding upon persons made parties as subsequent incumbrancers, the decision of the court upon questions raised and litigated by other parties, as to the validity and effect of the subsequent incumbrances, is *res adjudicata*, and the question cannot be again litigated, while such decision remains unreversed.

If individuals are made parties defendants to a foreclosure suit as subsequent incumbrancers, that is sufficient, as respects the conclusiveness of the decree therein, whatever may be the nature of their liens. It is of no consequence that the plaintiff has made them parties as judgment creditors, when they hold a chattel mortgage upon the property.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover the value of certain personal property, consisting of railroad locomotive engines, cars, machinery and fixtures, claimed to belong to the plaintiffs, and alleged to have been converted by the defendants, and of the value of $32,000.

The defendants, by their answer, *First,* admitted that they were an incorporation, (under the general railway act, incorporated February, 1859,) but denied each and every other allegation in the complaint contained.

*Second.* They alleged that they derive title to the property in the complaint set forth, under and by virtue of a purchase thereof made by them, for the full value of said property, in good faith, and without notice of the plaintiff's title or claim herein, from Charles Congdon and Robert B. Potter, in February, 1859, and that such purchase was made and the consideration therefor paid, with the knowledge and assent of the plaintiffs, and without any notice, suggestion, assertion or claim by them that the said Potter and Congdon had not perfect title to said property, or that the plaintiffs had any claim thereto, or interest therein, whatever.

*Third.* That in the year 1857, Shepherd Knapp and William H. Townsend, trustees, and Septimus Crooks, brought their certain action in this court, against the Canandaigua and Elmira (formerly called Canandaigua and Corning) Railroad Company, and others, to foreclose a certain mortgage, dated July 2d, 1850, made by that company to the said Knapp and Townsend, trustees, and claiming, among other property, that claimed by the plaintiffs herein, in which action the plaintiffs herein were duly served with process and made parties defendant. That in said action such proceedings were thereupon duly had, that on the 18th day of May, 1858, the said court, among other things, duly ordered, adjudged and decreed that the defendants in that action, and each and every of them, and all persons claiming, or to claim, from, by, through or under them, or either or any of them,

and all persons having a lien subsequent to said mortgage, dated the 2d day of July, 1850, whether by the subsequent mortgages set forth in the complaint in that action, or by judgment, decree or otherwise, upon the mortgaged premises and property claimed in that action, and all persons claiming, or who might claim, from or under the defendants in that action, or any or either of them, be, and they were thereby forever barred and foreclosed of and from all equity, and all manner of right of redemption and claim of, in or to said mortgaged premises and property, and every part and parcel thereof, which said mortgaged property embraced the property claimed in this action.

That under and by virtue of such judgment, the property in the complaint mentioned was duly sold, and that the same was duly purchased on the 23d day of July, 1858, by parties from whom these defendants took title, and that such purchase was made, and the consideration therefor paid, with the knowledge and assent of the plaintiffs, and without any notice, suggestion or claim made or asserted on their part, of any title to, or right in the said property in the complaint mentioned.

*Fourth.* That on or about the 24th day of January, 1861, the defendants purchased, for a valuable consideration, the said property claimed in the complaint herein, of the Elmira, Canandaigua and Niagara Falls Railroad Company and paid therefor. And that such purchase was made by the defendants in good faith, with the knowledge and assent of said plaintiffs, for a valuable consideration, and without any notice, suggestion or claim made or asserted on their part of any title to or right in the property in the complaint therein mentioned. And that the plaintiffs, or some of them, were interested in the consideration paid on such last mentioned sale for the property now claimed by them herein.

Wherefore the defendants claimed and insisted that the plaintiffs of any claim or title they had to the said property in the complaint mentioned or any thereof, were wholly barred,

foreclosed and estopped in law, equity and conscience from setting up or asserting the same herein. And they demanded judgment herein against the plaintiffs, with their costs, &c.

The facts were as follows : The Canandaigua and Corning Railroad Company was incorporated in 1845, and its name changed in 1850 to Canandaigua and Elmira Railroad Company, by which latter name it will herein be designated. It was the first of three railroad companies which have possessed the line. This first company executed a mortgage dated July 2d, 1850, to secure $300,000 of bonds, which embraced the road, locomotives, cars, shop machinery, &c. of the company, acquired and to be acquired. Each bond so issued had a certificate indorsed thereon, stating that such bond was included in the mortgage. Afterwards the company executed its second, third, fourth and fifth mortgages, each to secure further issues of bonds, and each subject in terms to the lien of the first mortgage. In June, 1855, the company executed a chattel mortgage to its directors, (which included the plaintiffs,) to secure them for liabilities incurred on its behalf ; and this mortgage was followed by a new mortgage in June, 1856, embracing the same and some additional property, which is the property mentioned in the complaint ; and the other directors subsequently transferred their interests to the plaintiffs and one James Harris. For default made August 2, 1855, on the third mortgage, suit was commenced, the company's property sequestered, and a receiver appointed in September, 1856, and the road and mortgaged property sold to one Holmes, from whom it was transferred to the Elmira, Canandaigua and Niagara Falls Railroad Company, the second railway company which possessed the line ; of which company Mr. Diven was president—called therefore frequently "Diven's Company." Thereafter, for default on the first mortgage, suit was commenced in July, 1857, and a receiver of the property appointed. This suit was contested by the Diven company, on the ground, among others, that the first mortgage did not embrace and hold the rolling stock.

Benjamin *v.* Elmira, Jefferson and Canandaigua R. R. Co.

The plaintiffs here were defendants in that suit, but did not appear and defend. Judgment was ordered against them " that they may be forever barred and foreclosed of and from all equity of redemption and claim of, in and to said mortgaged premises and property, and every part and parcel thereof." Judgment having been rendered in favor of the holders of the first mortgage, the property was accordingly, in July 1858, sold. The sale embraced the rolling stock, shop machinery, &c. included in the plaintiffs' chattel mortgage ; and they forbade it. All the property was bought by Congdon and Potter, and subsequently conveyed for value to the defendants, who are the third company which has possessed the line. Diven's company appealed from the judgment in the first mortgage case, and that judgment was affirmed. That company then moved for a new trial, which was denied, and then in June, 1860, made a settlement with the first mortgage holders and their assignees, the defendants here, by which it was arranged that the property should be appraised, and three fourths in value set off to the defendants here, and one fourth to Diven's company, and the litigation thus settled. The property was accordingly appraised, the division made, and releases executed. By this division, the mortgaged engines and cars were set off to the defendants here, and valued and set off as if free of the present plaintiffs' chattel mortgage. The defendants claimed that the plaintiffs knew of the division, and some of them were interested in it, but they made no objection to it, and asserted no claim under their mortgage. In April, 1859, these defendants had leased the railroad to the Erie company, with the privilege of taking the rolling stock with the road, on certain conditions to be complied with ; meantime it remained in the shops at Canandaigua. In July, 1861, the plaintiffs demanded the rolling stock from Rathbun, a director of the defendants at Elmira, who referred them to a superintendent, of whom also, they demanded it, who declared that he had no control over

it and referred them to certain officers of the company; whereupon they brought suit.

The referee found as conclusions of law : *First.* That the said mortgage of the Canandaigua and Elmira Railroad Company embraced and was a valid and subsisting lien on the property mentioned in the complaint in this action prior and superior to the lien created by the mortgages to the plaintiffs herein, and that under the judgment and proceedings in the action to foreclose that mortgage, such property (excepting only the particular articles in the findings and facts therein twenty-seventhly mentioned) was duly sold and became the property of the purchasers at such sale, and those claiming under them.

*Second.* That the said third mortgage of the said Canandaigua and Elmira company also embraced and was a valid and subsisting lien on the property claimed by the plaintiffs herein, prior and superior to the lien created by the mortgages to the plaintiffs in this action, and that under the judgment and proceedings in that action, the same was duly sold and became the property of the said George B. Holmes, and on the sale by him the property of the said Elmira, Canandaigua and Niagara Falls Company subject to the lien of such first mortgage.

*Third.* That the plaintiffs herein were duly made defendants to the said action brought by Knapp and Townsend, trustees, to enforce said first mortgage, and that by the foreclosure therein, they became and are barred and estopped from contesting the validity of said mortgage, and the superiority of the lien thereof, and of the title acquired thereunder, over their title or right to the property mentioned in the complaint in this action.

*Fourth.* That the said mortgages to the plaintiffs having been given in contemplation of the insolvency of the said company, were void as against the creditors of that company and those claiming under them.

*Fifth.* That the plaintiffs herein, and their associates, were

not as against the prior mortgages of the Canandaigua and Elmira company, and those claiming under them, *bona fide* mortgagees for the value of the property embraced in the mortgages to them (said plaintiffs herein.)

*Sixth.* That the property in the complaint mentioned was not the property of the plaintiffs herein, as alleged, nor were they entitled to the possession thereof, nor has the same been wrongfully converted by the defendants herein.

*Seventh.* That the defendants were entitled to judgment in this action.

Judgment being entered accordingly, the plaintiffs appealed.

*E. P. Hart,* for the appellants.

*C. N. Potter,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. The conclusions upon the law, of the learned judge who tried this cause as a referee, upon the facts found by him, I think entirely correct. The decree upon the foreclosure of the mortgage of $300,000, given to Knapp & Townsend as trustees, &c. is, I think, binding and conclusive, as an adjudication, upon the defendants in respect to the subject matter in controversy in this action. The mortgage, mortgage bond, and the certificate thereon indorsed, referred to in said decree, are all to be construed together. They are parts and parcels of the same security. By the mortgage, the mortgagors grant, bargain, transfer and set over to the said trustees, the party of the second part, "all and singular the railroad constructed and to be constructed, with the lands, tracks, lines, bridges, way buildings, piers, privileges and franchises, together with all the locomotives, tenders, cars, carriages, tools and machinery now owned, *or hereafter to be owned,* by said company, or in any way belonging to or appertaining to said road and to be used thereon, between Canandaigua and Jefferson." This

mortgage was clearly valid in equity in respect to subsequently acquired property, and the decree of this court declaring such to be its effect, and directing the sale of all the property embraced therein, is a conclusive adjudication upon that point, against all persons, parties or privies in that suit. The plaintiffs in this action were parties defendant in that suit; their rights were all acquired and existed at the time of its commencement. They were made parties as subsequent incumbrancers by judgment or mortgage. It was alleged in the complaint that their several judgments, mortgages or other claims were subsequent and subordinate and inferior to the said first mortgage, and the lien, incumbrance, claim and effect thereof, as to all the property, real and personal, then or thereafter, of the said railroad company. If there is any thing in the principle that when a party is brought into court and given an opportunity to present his claims and contest the rights asserted against him, he must do so at the peril of being cut off and foreclosed in respect to all such claims, the plaintiffs are clearly estopped from going back of this decree. They were subsequent incumbrancers upon the property in question. They were called upon to set up their claims and assert their rights, and omitted to do so, and suffered the plaintiffs in that suit to take the said decree and proceed to execute the same.

But if this decree were not binding upon them as an adjudication, the decision of this court upon the questions presented in that case and raised and litigated by the Elmira and Canandaigua and Niagara Falls Railroad Company on the express ground that said mortgage did not bind or hold the rolling stock of said Canandaigua and Elmira company, nor its property acquired after the date of the mortgage, is *res adjudicata.* This question was then litigated, and this court decided the question, at general term, in favor of the plaintiff. (*See MS. opin. of court in case of Knapp v. Can. and Elmira R. R. Co.* 1859.) The question presented on the argument, of the construction and form of the

Benjamin *v.* Elmira, Jefferson and Canandaigua R. R. Co.

said mortgage is therefore not an open one, in this court. That judgment remains unreversed, and we see no reason to overrule the decision then made upon the question. It is suggested that the said judgment and decree is not conclusive, because the plaintiffs were made parties as judgment creditors. I do not think this position at all tenable. The plaintiffs were made parties as subsequent incumbrancers. It matters not what their liens were ; they had an opportunity to set them up and litigate the question in that suit. It is of no consequence that the plaintiffs made them thus parties as judgment creditors, and in ignorance of their chattel mortgage. The plaintiffs in this suit were not ignorant of the existence of their own mortgage, and they knew that the plaintiff in that suit claimed a prior lien upon the property in question therein, and were seeking to enforce it against them and all subsequent incumbrancers, or to cut off all subsequent liens of whatever nature.

Being quite clear in the opinion that these plaintiffs are estopped from going behind this decree to bring into discussion anew the question of the original construction of the said mortgage to Knapp & Townsend, foeeclosed thereby, I have not thought, and do not think, it necessary to discuss the other question raised upon the argument. I will say, however, that I think the case, upon the whole, was properly disposed of by the referee, and that his conclusion upon the whole case is correct and sound.

The judgment should be affirmed, with costs.

Judgment affirmed.

[MONROE GENERAL TERM, June 3, 1867. *Welles, E. D. Smith* and *Johnson,* Justices.]